UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YVONNE DAVIS, on behalf of O.C.,

                Plaintiff,

     -against-

RICHARD CARRANZA, in his official capacity as
Chancellor of the NEW YORK CITY DEPARTMENT
OF EDUCATION, the NEW YORK STATE
EDUCATION DEPARTMENT, and THE NEW YORK
CITY DEPARTMENT OF EDUCATION,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _3/15/2021_____

19 Civ. 10123 (AT)

**ORDER**

ANALISA TORRES, District Judge:

       Plaintiff, Yvonne Davis ("Guardian"), individually and on behalf of her child, O.C.,

brings this action against Defendants, Richard Carranza, in his official capacity as Chancellor of

the New York City Department of Education, the New York City Department of Education, and

the New York State Education Department, (together, the "DOE"), pursuant to the Individuals

with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq*. (the "IDEA").  Compl., ECF No. 5.

Guardian seeks review of the September 25, 2019 decision of New York State Review Officer

Steven Krolak, affirming the June 12, 2019 decision of Impartial Hearing Officer Daniel Ajello,

who found that the DOE had offered O.C. a free appropriate public education for the 2018–2019

school year.  Compl. ¶¶ 22, 24.  Guardian moves for summary judgment, ECF No. 21, and the

DOE cross-moves for summary judgment, ECF No. 24.  For the reasons stated below,

Guardian's motion is DENIED, and the DOE's cross-motion is GRANTED.

## STATUTORY FRAMEWORK

       Under the IDEA, New York State must "provide disabled children with a free and

appropriate public education ('FAPE')."  *R.E. v. N.Y.C. Dep't of Educ*., 694 F.3d 167, 174–75

(2d Cir. 2012).  "To ensure that qualifying children receive a FAPE, a school district must create

an individualized education plan ('IEP') for each such child." *Id*. at 175 (citing 20 U.S.C. § 1414(d)).  The IEP is a written statement that "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *L.O. v. N.Y.C. Dep't of Educ.*, 822 F.3d 95, 102–03 (2d Cir. 2016) (quoting *R.E.*, 694 F.3d at 175).  "The IDEA requires that an IEP be 'reasonably calculated to enable the child to receive educational benefits.'" *R.E.*, 694 F.3d at 175 (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 207 (1982)).

In New York City, the DOE creates an IEP through a local Committee on Special Education (the "CSE").  *See* N.Y. Educ. Law § 4402(1)(b)(1).  At a minimum, the CSE for each IEP—the IEP team—is composed of the student's parent, one of the student's special education teachers, a school psychologist, a school district representative, an individual who can interpret the instructional implications of evaluation results, a school physician, and a parent of another student with a disability.  *Id*. § 4402(1)(b)(1)(a).  "The CSE must examine the student's level of achievement and specific needs and determine an appropriate educational program." *R.E.*, 694 F.3d at 175.

If a parent believes that the DOE has breached its obligations under the IDEA by failing to provide the student with a FAPE, the parent "'may unilaterally enroll the child in a private school and seek tuition reimbursement from the school district' by filing what is known as a 'due process complaint.'" *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015) (per curiam) (quoting *Hardison v. Bd. of Educ.*, 773 F.3d 372, 376 (2d Cir. 2014)).  The due process complaint initiates administrative proceedings involving a hearing before an impartial hearing officer ("IHO").  *R.E.*, 694 F.3d at 175 (citing N.Y. Educ. Law § 4404(1)).  "Either party may

then appeal the case to the state review officer ('SRO'), who may affirm or modify the IHO's order." *Id*. (citing N.Y. Educ. Law § 4404(2)).  The party initiates the appeal to the SRO by filing a request for review, which must set forth the specific IHO findings being challenged, as well as conforming to other procedural requirements.  N.Y. Comp. Codes R. & Regs. tit. 8, §§ 279.8(c)(1)–(4), 279.4(a).

The administrative proceedings are governed by a three-pronged framework known as the Burlington/Carter test.  *See Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993); *Sch. Comm. of Town of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985).  As implemented by New York law, this test allocates to "the local school board . . . the initial burden of establishing the validity of its plan at a due process hearing.  If the board fails to carry its burden, the parents bear the burden of establishing the appropriateness of their private placement and that the equities favor them."  *R.E.*, 694 F.3d at 184–85 (footnote omitted) (citing N.Y. Educ. Law § 4404(1)(c)).  Any party aggrieved by the SRO's final administrative decision has the right to seek further review by bringing a civil action in state or federal court.  *Id*. at 175 (citing 20 U.S.C. § 1415(i)(2)(A)).

## BACKGROUND

### I.   O.C.'s 2018–2019 IEP

O.C. is a ten-year-old, non-verbal, non-ambulatory child with disabilities.  Pl. Mem. at 4, ECF No. 23; Def. Mem. at 4, ECF No. 25; Admin. R. at 1182, ECF No. 20-2.  In the 2017–18 school year, he attended the International Academy of Hope ("iHope"), a private school.  Admin. R. at 1244.  Before the 2018–19 IEP at issue, the DOE last issued an IEP for the 2016–17 school year.[1]  Admin. R. at 964.

---

[1] The DOE concededly did not convene an IEP team for O.C. in the 2017–18 school year.  Admin. R. at 953–54,

By letter dated January 22, 2018, the DOE notified Guardian[2] that the DOE had scheduled the meeting to develop O.C.'s IEP for that year for February 8, 2018, and stated that an IEP meeting must be held no later than February 9, 2018.  Admin. R. at 1198.  The iHope program director then contacted the relevant CSE chairperson, informing her that the parent and school requested that the DOE hold the IEP meeting in April.  *Id.* at 64, 545, ECF No. 20-1. Therefore the DOE issued another meeting notice dated March 1, 2018, inviting Guardian to an IEP meeting scheduled for April 10, 2018.  *Id.* at 1201.  The day before that meeting was slated to occur, Guardian, through her attorney, requested that the meeting be rescheduled.  *Id.* at 547–48, 1225.  By letter dated April 13, 2018, the DOE rescheduled the meeting to April 27, 2018.  *Id.* at 1225.  In a written notice dated April 17, 2018, the DOE explained why it was granting the request to reschedule and recounted prior attempts to schedule the meeting.  *Id.* at 1220.

On April 17, 2018, a DOE social worker telephoned Guardian to inquire about a mutually agreeable time and date for the IEP meeting; she reported that Guardian directed her to contact Guardian's counsel.  *Id*. at 1225.  Two days later, Guardian requested by letter that the IEP meeting be rescheduled once again to "Monday through Friday after 3:00pm" at the iHope premises; that the IEP meeting (and meeting notice) include a full committee, including a school physician; that certain named iHope related services providers[3] be named in the meeting notice; and that the meeting notice be sent to iHope.  *Id.* at 1125.  She also requested that the IEP team

---

957.  In April 2018, IHO Vanessa Gronbach found that this had deprived O.C. of a FAPE, and thus granted Guardian pendency placement at iHope for that school year.  *Id*. at 960.

[2] Davis is O.C.'s grandmother and legal guardian.  The state officers refer to her as both Guardian and Parent, and the Court adopts their terminology when quoting their opinions.

[3] "Related services" include physical therapy, occupational therapy, speech therapy, and vision therapy that an IEP recommends along with the special education program.  Admin. R. at 1191–92.

"consider a placement in a non-public school" and "conduct the necessary evaluations for such consideration . . . prior to scheduling the meeting." *Id.*

By notices dated April 26 and 27, 2018, the DOE summarized the attempts made to schedule the meeting, declined the request to hold the meeting at iHope, granted the request for the participation of a school physician, and invited Guardian to an IEP meeting scheduled for May 8, 2018, at 3:15 p.m. *Id.* at 1207–08, 1241–42. The April 27 notice did not name the requested iHope providers, nor a school physician. *Id.* at 1207–08. The DOE issued a revised notice dated April 30, 2018, which included the names of the requested iHope staff, but did not identify a school physician or parent member of the CSE. *Id.* at 1129–30.

One day before the scheduled meeting, on May 7, 2018, Guardian's counsel e-mailed the DOE another letter, stating that the meeting should not proceed because Guardian's availability had shifted to weekdays other than Wednesday between 11:00 a.m. and 4:00 p.m., resulting in her no longer being able to attend, and because the meeting notice did not include a parent member and school physician. *Id.* at 1288–91. The attorney reiterated that Guardian requested the DOE conduct "any evaluations necessary when considering a non-public school placement." *Id.*

The IEP meeting convened on May 8, 2018 (the "IEP Meeting"), attended by a district special education teacher and a school psychologist. A few hours before the meeting, the DOE emailed iHope, reminding the school of the scheduled meeting and requesting updated progress reports, but received no response. *Id.* at 1224. During the IEP Meeting, a member of the IEP team again attempted to contact iHope; the school's representative was "in a meeting" and an employee stated they had no knowledge of the IEP Meeting. *Id.* The DOE also unsuccessfully attempted to contact Guardian during the meeting, calling two numbers and leaving a message.

5

*Id.* Ultimately, Guardian, a parent member, a school physician, and the requested iHope staff included on the meeting notice did not attend. *Id.* at 1197.

At the IEP Meeting, the IEP team reviewed O.C.'s previous IEPs and the documents in his case file. Admin. R. at 60, 292–93. The IEP that resulted from this meeting (the "May 2018 IEP") recommended, as relevant here, a classroom size of 12:1+(3:1), related services provided for thirty minutes each, "group service[s]" of a full-time health paraprofessional, and a full-time transportation paraprofessional. *Id.* at 1191–92. It also classified O.C.'s disability as "multiple disabilities." *Id.* at 1182. This IEP differed from the 2016–17 IEP, which had recommended a classroom size of 6:1:1, related services provided for sixty minutes each, an individual full-time transportation paraprofessional, and an individual health paraprofessional, and classified O.C.'s disability as Traumatic Brain Injury ("TBI"). *Id.* at 964, 980–81. The May 2018 IEP does not, in the section denoting "other options considered," indicate that the IEP team considered non-public schools. *Id.* at 1196.

On June 19, 2018, the DOE issued a school location letter, informing Guardian of the particular public school to which O.C. was assigned for the year. *Id.* at 1218.

II.   <u>IHO Hearing and Opinion</u>

In a letter dated June 21, 2018, Guardian stated to the DOE that "to date, the DOE has not offered [O.C.] a program or placement that can appropriately address his educational needs" nor has it "conducted an annual IEP for this student." *Id.* at 1056. In addition, Guardian said "the DOE has not properly responded" to the request for a full meeting with a school physician to develop an IEP, and so Guardian was "still requesting the CSE schedule an appropriate IEP meeting at a mutually agreeable date and time to allow for all mandated members of the IEP team to participate." *Id.* The letter noted that Guardian "remains willing and ready to entertain

an appropriate DOE program and an appropriate public or approved non-public school placement." *Id.*  Absent such a program, the letter functioned as a notice that Guardian intended to unilaterally place O.C. at the International Institute for the Brain ("iBrain") and seek public funding for the tuition.  *Id.*  The DOE did not reconvene an IEP meeting, and Guardian enrolled O.C. at iBrain.  Admin. R. at 1108–13.

On July 9, 2018, Guardian filed a due process complaint alleging that the DOE failed to offer O.C. a FAPE (the "DPC").  *Id.* at 946.  The DPC alleges, in relevant part, that the DOE failed to offer O.C. a FAPE because of "several substantive and procedural errors . . . while developing" the May 2018 IEP and the placement at the recommended public school in a 12:1+(3:1) classroom, both of which recommendations Guardian "reject[ed] in their entirety." *Id.*  In addition, Guardian claimed that the DOE "impeded [O.C.'s] right to a FAPE" and "significantly impeded [Guardian's] opportunity to participate in the decision-making process." *Id.* at 947–48.  Specifically, the DPC alleges that the DOE failed to hold an IEP meeting at a time that was mutually agreeable with Guardian and, mentioned twice, that the DOE ignored requests for a full IEP team and conducted the meeting without Guardian present.  *Id.* at 947.  In addition, Guardian characterized the May 2018 IEP as insufficient because of "the significant and unsubstantiated reduction in the related services mandates and the student-to-teacher ratio of the recommended class size," a recommendation which was "not the product of any individualized assessment" of O.C.'s needs, and its classification of O.C.'s disability as Multiple Disabilities as opposed to TBI.  *Id.* at 947.  Guardian also faulted the May 2018 IEP because it did not meet O.C.'s "highly intensive management needs requiring a high degree of individualized attention and intervention," as the recommended program and placement did not represent the "[l]east [r]estrictive [e]nvironment" for O.C. and the recommended class ratio is "insufficient to address

7

[O.C.'s] needs . . . and does not offer the 1:1 direct instruction and support the student requires." *Id.* at 947–48.  To address these problems, Guardian proposed that the DOE pay O.C.'s tuition to iBrain for the 2018–19 school year and transportation costs, and reconvene an IEP meeting.  *Id.* at 948.

IHO Daniel Ajello conducted a five-day hearing from September 2018 to March 2019, during which the school psychologist present at the IEP Meeting, the local CSE Chairperson, the iBrain Director of Special Education, and Guardian testified.  *Id.* at 44–46.

On June 12, 2019, IHO Ajello issued his findings of fact and conclusions of law.  *Id.* at 69.  He concluded that the DOE had neither substantively nor procedurally deprived O.C. of a FAPE, and dismissed the DPC.  *Id.* at 62–63.  Substantively, IHO Ajello credited the school psychologist, who explained the process by which the IEP team reached the May 2018 IEP's recommendations and articulated the rationale for a classification of Multiple Disabilities, related services, and the class size.  *Id.* at 60–61.  The May 2018 IEP, IHO Ajello concluded, addressed O.C.'s needs, and the IEP team "indicated an understanding" of O.C.  *Id.* at 61.  Procedurally, he found that the failure to conduct a timely meeting and to properly include all members on the notices was "minor," given the DOE's efforts to communicate with Guardian and iHope throughout the process.  *Id.* at 62.  IHO Ajello also noted that "[a]ny deficiency in evaluative materials . . . could have been exposed by providing additional consistent Parent communication and cooperation through the process."  *Id.* at 63.  Moreover, regarding the composition of the IEP team, IHO Ajello concluded that "the DOE made any legally required, and reasonable, efforts to obtain Parent participation and keep up with the continuously changing parameters of the Parent meeting requirements" and that "the Parent, perhaps not intentionally, frustrated attempts to obtain her participation in the IEP [M]eeting throughout the process" and therefore, "her non-

attendance cannot be used to fault the IEP." *Id.* at 63, 66.  He then considered the "equities related to tuition funding," and found that the equities weighed against Guardian.  *Id.* at 67–68.

III.   SRO Opinion

On July 10, 2019, Guardian filed a request for review of IHO Ajello's decision (the "RFR").  Admin. R. at 75.  SRO Steven Krolak affirmed IHO Ajello's decision on September 25, 2019.  *Id.* at 1–35.  He concluded that the majority of Guardian's challenges had either been abandoned given Guardian's failure to comply with the content regulations on requests for review, *id.* at 17–22, or were outside the scope of review because they were not included in the DPC, *id.* at 22–24.  Of the claims SRO Krolak considered on the merits, as relevant to this action, SRO Krolak affirmed IHO Ajello's finding that any deficiency in the meeting notices did not result in a denial of a FAPE.  *Id.* at 31.

On October 31, 2019, Guardian initiated an action in this Court, objecting to SRO Krolak's conclusions.  ECF No. 1.  Specifically, Guardian contends that SRO Krolak erred by failing to consider Guardian's challenges to:

1.  the alleged lack of evidence presented by the DOE that their recommended school could implement the May 2018 IEP;

2.  the May 2018 IEP's failure to recommend school nursing services, annual goals for O.C.'s 1:1 paraprofessional, parent counseling and training, and assistive technology services;

3.  the May 2018 IEP's failure to recommend O.C.'s related services on a "push-in, pull-out" basis;

4.  the alleged insufficiency of the DOE's prior written notice to Guardian;

5.  the DOE's failure to reconvene an IEP meeting after Guardian's letter of June 21, 2018;

6.  the alleged predetermination of the May 2018 IEP's recommendation of a public school;

7.  the May 2018 IEP's classification of O.C.'s disability as Multiple Disabilities as opposed to TBI;

8.  the timing of the IEP Meeting;

9.  the evaluations underlying the May 2018 IEP;

10. the composition of the IEP team;

11. the May 2018 IEP's alleged failure to account for O.C.'s highly intensive management needs;

12. the May 2018 IEP's related services recommendation; and

13. IHO Ajello's alleged failure to address Prongs II and III of the Burlington/Carter test.

Pl. Mem. at 2–4; Compl. ¶¶ 26–31.  On March 23 and April 22, 2020, respectively, Guardian moved and the DOE cross-moved for summary judgment.  ECF Nos. 21, 24.

## DISCUSSION

Guardian moves for summary judgment based on the SRO's failure to address her challenges to the May 2018 IEP.  The Court considers, in turn, the challenges SRO Krolak concluded were not included in the DPC, and those he concluded were not properly raised in the RFR.

I.  Legal Standard

Although the parties have sought relief from the Court by motions for summary judgment, the "procedure is in substance an appeal from an administrative determination, not a summary judgment."  *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012) (quoting *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 84 n.3 (2d Cir. 2005)).  "[T]he motion serves as a pragmatic procedural mechanism for reviewing a state's compliance

with the procedures set forth in [the] IDEA [in developing the specific IEP at issue] and determining whether the challenged IEP is reasonably calculated to enable the child to receive educational benefits." *Id*. at 225–26 (second and third alterations in original) (quoting *Lillbask*, 397 F.3d at 83 n.3). Accordingly, "a motion for summary judgment in an IDEA case often triggers more than an inquiry into possible disputed issues of fact." *Lillbask*, 397 F.3d at 83 n.3. Rather, the Court "must base its decision on the preponderance of the evidence." *R.E.*, 694 F.3d 167, 184 (2d Cir. 2012).

Nevertheless, "federal courts reviewing administrative decisions must give 'due weight' to these proceedings, mindful that the judiciary generally 'lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" *M.H.*, 685 F.3d at 240 (quoting *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 113 (2d Cir. 2007)). "[C]ourts may not 'substitute their own notions of sound educational policy for those of the school authorities which they review.'" *T.Y. ex rel. T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)). Nor may the courts make subjective credibility assessments or weigh the testimony of educational experts when the state authorities have already performed these functions. *M.H.*, 685 F.3d at 240. In this way, "the role of the federal courts in reviewing state educational decisions under the IDEA is 'circumscribed.'" *Id*. (quoting *Gagliardo*, 489 F.3d at 112).

However, "the deference owed to an SRO's decision depends on the quality of that opinion." *R.E.*, 694 F.3d at 189. Courts may consider "whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *Id*. (quoting *M.H.*, 685 F.3d at 244). Considering the respective institutional competencies of courts and administrative officers, the SRO's

"determinations regarding the substantive adequacy of an IEP should be afforded more weight than the determinations concerning whether the IEP was developed according to the proper procedures."  *M.H.*, 685 F.3d at 244.  Where an SRO did not reach an issue, courts defer to the IHO in the same manner.  *R.E.*, 694 F.3d at 189.  Additionally, courts should "afford more deference when [their] review is based entirely on the same evidence as that before the SRO."  *Id.* (quoting *M.H.*, 685 F.3d at 244).

A plaintiff can challenge both the procedural and substantive features of an IEP.  "The initial procedural inquiry in an IDEA case 'is no mere formality,' as 'adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP.'"  *A.C. ex rel. M.C. v. Bd. of Educ.*, 553 F.3d 165, 172 (2d Cir. 2009) (quoting *Walczak v. Fla. Union Free School Dist.*, 142 F.3d 119, 129 (2d Cir. 1998).  "[H]owever, it does not follow that every procedural error in the development of an IEP renders that IEP legally inadequate under the IDEA."  *Id.*  (alteration in original) (quoting *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 381 (2d Cir. 2003)).  A procedural violation renders the IEP inadequate only when it (1) "impeded the child's right to a [FAPE]," (2) "significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a [FAPE]," or (3) "caused a deprivation of educational benefits."  20 U.S.C. § 1415(f)(3)(E)(ii); *accord L.O. v. N.Y.C. Dep't of Educ.*, 822 F.3d 95, 109 (2d Cir. 2016).  "Multiple procedural violations may cumulatively result in the denial of a FAPE even if the violations considered individually do not."  *R.E.*, 694 F.3d at 184.

When seeking to overturn the decision of an SRO, the plaintiff bears the burden of demonstrating that the decision was insufficiently reasoned or supported.  *Id.* at 225 n.3.

12

II.    Claims Considered Waived by the SRO

"[I]ssues not raised in due process complaints are foreclosed from review in federal court, absent agreement from the opposing party."  *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 78 (2d Cir. 2014).  This rule also bars issues ostensibly encompassed in a "general statement lack[ing] the specificity necessary to notify DOE of plaintiffs' intent to pursue administratively every issue."  *B.P. v. N.Y.C. Dep't of Educ.*, 634 F. App'x 845, 849 n.6 (2d Cir. 2015).  Rather, a due process complaint must "must list the alleged deficiencies with enough specificity so that the [DOE] is able to understand the problems and attempt to remedy them."  *T.G. ex rel. R.P. v. N.Y.C. Dep't of Educ.*, 973 F. Supp. 2d 320, 337 (S.D.N.Y. 2013) (finding specific claims not encompassed in the due process complaint's claim that placement at a certain school was "inappropriate").

However, courts should not apply this rule "mechanically."  *C.F.*, 746 F.3d at 78.  Even if a claim is not specifically raised in a due process complaint, courts nevertheless consider the claim where "(1) the [d]ue [p]rocess [c]omplaint provides fair notice to the [school district] of the argument at issue; (2) both the IHO and SRO reach the issue on the merits, giving the federal court a record for review; or (3) the argument goes to the heart of [the] dispute."  *S.B. v. N.Y.C. Dep't of Educ.*, 117 F. Supp. 3d 355, 362 (S.D.N.Y. 2015) (quotation marks and alterations omitted) (citing *C.F.*, 746 F.3d at 78).

A.    School Implementation Evidence

SRO Krolak determined that Guardian's challenge to the sufficiency of the evidence supporting the DOE's conclusion that its chosen school location is able to implement the May 2018 IEP was not included in the DPC.  Guardian contends that this challenge was encompassed in the DPC's statements that the "DOE failed to offer [O.C.] a [FAPE] for school year 2018–19

13

by committing many substantive and procedural errors under the IDEA and state law while developing the IEP issued on 5/8/18 and subsequent placement recommendation at . . . Chelsea Prep. . . ." and "the NYC DOE failed to offer [O.C.] an appropriate school program and placement that meets [O.C.'s] highly intensive management needs."  Pl. Reply at 4–5, ECF No. 26.  At the IHO hearing, however, Guardian's counsel expressly indicated that Guardian was not "mak[ing] any judgment . . . as to whether or not a particular school . . . could have implemented [the IEP]" and that "the main issue is the fact that the IEP itself—the recommended program of 12:1:4 was not appropriate."  Admin. R. at 329–330.  Guardian's counsel argued, in fact, that the DOE need not to present testimony to prove school implementation.  *Id.* at 335.  As Guardian previously stated that she had not complained about implementation in the DPC, to now argue that she did is precisely the "sandbagging" that the waiver requirement is meant to prevent.  *C.F.*, 746 F.3d at 78.

Nor does this issue fall into one of the *C.F.* exceptions.  The DOE did not have fair notice the issue was in contention, neither the IHO nor the SRO considered the argument on the merits, Admin. R. at 23–24 n.43, and Guardian stated that this was not her "main contention."  *Id.* at 329–30.  Therefore, SRO Krolak properly determined this argument was waived.

      B.    School Nurse, Paraprofessional, Parent Counseling, and Assistive Technology Recommendations

Guardian next argues that the statement, "the NYC DOE failed to offer [O.C.] an appropriate school program and placement that meets [O.C.'s] highly intensive management needs" encompasses her challenges to the May 2018 IEP's failure to recommend a school nurse, annual goals for the paraprofessional, parent counseling and training services, and assistive technology services, challenges which SRO Krolak deemed waived.  Pl. Reply at 6.

This general statement in the DPC does not identify the specific issues which Guardian planned to challenge, nor did it give the DOE the opportunity to remedy the issues in the resolution period.  *T.G.*, 973 F. Supp. 2d at 336–37 (finding claims that the IEP was deficient for failure to provide parent counseling and behavioral intervention, and certain therapies, not encompassed in the statement that the program and placement were "inappropriate"); *N.K. v. N.Y.C. Dep't of Educ.*, 961 F. Supp. 2d 577, 587 (S.D.N.Y. 2013) ("Plaintiffs' due process notice did not specify which assessments Plaintiffs believe J.K. needed that the district failed to arrange . . . .  This failure constitutes a waiver of Plaintiffs' claims").  In fact, Guardian follows this allegation in the DPC with a citation to the section of the New York code which refers to classroom size, and the explanation that, "[t]he recommended program and placement does not represent the [l]east [r]estrictive [e]nvironment for [O.C.]," thereby indicating that the highly intensive management needs in fact refers to classroom size.  Admin. R. at 947–48.

This issue is also not reviewable based on the *C.F.* exceptions.  The DPC did not provide the DOE fair notice of the specific deficiencies with respect to O.C.'s management needs, nor did SRO Krolak reach the issue.  Finally, it does not go to the heart of the dispute.  Guardian's dissatisfaction with the May 2018 IEP revolves around (1) the deficient makeup of the IEP team and (2) the classroom size.  Those are the problems highlighted initially in the DPC, and then reiterated multiple times in the specific allegations.  Admin. R. at 947–48.  Guardian's June 21, 2018 letter also focuses on the issue of the IEP team composition, *id*. at 1025.  Therefore, the claims regarding O.C.'s management needs were waived.

C.       Push In, Pull Out Services

Guardian argues that her challenge to the May 2018 IEP's failure to recommend related services be provided on a "push in, pull out" basis,[4] which SRO Krolak considered waived, is encompassed in the allegation that "[the recommended class ratio] . . . is too large a ratio to ensure the constant 1:1 support and monitoring [O.C.] requires in order to remain safe and does not offer the 1:1 direct instruction and support [O.C.] requires to make any progress under the IEP." Pl. Reply at 6. However this allegation does not give notice that Guardian is challenging not just the ratio of students, but the method of offering 1:1 direct instruction.

Nor does it fall into any of the *C.F.* exceptions—the DOE did not have fair notice that Guardian was challenging the method of delivery of the related services, SRO Krolak did not reach the issue, and it does not go to the heart of the action. Therefore, this claim is not before the Court.

D.       Prior Written Notice

Guardian argues that she was denied prior written notice because the DOE did not explain why it did not grant Guardian's written requests to reschedule the IEP Meeting, to include a parent-member, a social worker, and a school physician on the IEP team, and to consider a non-public school and a 6:1:1 classroom size, as the IDEA requires. Pl. Mem. at 12. SRO Krolak concluded that this claim was not included in the DPC. Admin. R. at 24. Guardian contends that it was encompassed in the statement that, "the NYC DOE failed to hold an annual review meeting . . . which complied with my client's documented request for a [f]ull [c]ommittee meeting to discuss the extraordinary needs of [O.C.] for the extended school year 2018–2019."

---

[4] Related services provided on "a push-in/pull-out basis that is dependent on the therapist's discretion," Pl. Mem. at 16, means that the services are provided in a separate location, as opposed to in O.C.'s main classroom, at the therapist's discretion, Def. Mem. at 12, Admin. R. at 1064.

Pl. Reply at 6.  Regardless of whether the issue is covered by this statement, SRO Krolak and

IHO Ajello both addressed this issue, and it is relevant to the heart of Guardian's procedural

claim: that the composition of the IEP team was insufficient.  Admin. R. at 29–31, 62–63.

Therefore, the Court reviews this issue on the merits.

The IDEA requires the DOE to provide prior written notice to the parent of the child

whenever the agency "(A) proposes to initiate or change; or (B) refuses to initiate or change, the

identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to

the child."  *MB v. City Sch. Dist. of New Rochelle*, No. 17 Civ. 1273, 2018 WL 1609266, at *9

(S.D.N.Y. Mar. 29, 2018) (quoting 20 U.S.C. § 1415(b)(3)).  That notice must contain:

> (A) a description of the action proposed or refused by the agency;
> (B) an explanation of why the agency proposes or refuses to take the action and a
> description of each evaluation procedure, assessment, record, or report the agency
> used as a basis for the proposed or refused action;
> . . .
> (E) a description of other options considered by the IEP Team and the reason why
> those options were rejected; and
> (F) a description of the factors that are relevant to the agency's proposal or
> refusal.

20 U.S.C. § 1415(c)(1); *accord* N.Y. Comp. Codes R. & Regs., tit. 8, § 200.5(a)(3).

SRO Krolak determined that the prior written notices of April 27 and 30, 2018, were

insufficient, because they did not include the names of the physician and parent-member

requested by Guardian.[5]  Admin. R. at 31.  However, SRO Krolak reasoned that such deficiency

was harmless, because Guardian did not demonstrate how the failure to identify a parent-member

or physician constituted an actionable procedural violation: that is, how it impeded O.C.'s right

to a FAPE or Guardian's ability to participate in the decision-making process, and there was no

---

[5] SRO Krolak noted that, despite Guardian's contentions and the statements in the DOE's standard operating
procedure, Guardian did not have a right to have a district social worker present.  Admin. R. at 30; *accord* 34 C.F.R.
§ 300.321(a); N.Y. Comp. Codes R. & Regs., tit. 8, § 200.3(a)(1).

evidence in the record to support such a conclusion.  *Id.*  SRO Krolak observed that although

Guardian argued that a physician may have impacted O.C.'s disability classification, she did not,

as discussed *infra* § III.A, demonstrate that a change in classification would have impacted the

IEP.  Admin. R. at 31 n.51.  He further observed that lack of notice was particularly harmless

where "the individuals who would have provided the most pertinent information about the

student—to wit, the parent and iHope staff—failed to attend the CSE meeting even though they

had been properly included on the April 30, 2018 meeting notice."  *Id.* at 31.  The Court finds

this conclusion well-reasoned and based on the facts in the record, and, therefore, defers to the

SRO's decision.

Guardian seems to argue that it was the lack of an *explanation* for the DOE's failure to

name the requested members, reschedule, or consider a 6:1:1 classroom that harmed O.C.  Pl.

Mem. at 12.  There is no evidence, however, that the May 2018 IEP would be different had the

notices included an explanation, or that this lack of explanation impeded O.C.'s right to a FAPE

or caused a deprivation of educational benefits.  Moreover, IHO Ajello found, credited by the

SRO and supported by the evidence, that Guardian, "perhaps not intentionally, frustrated

attempts to obtain her participation in the IEP [M]eeting throughout the process," and that

despite the repeated requests to reschedule the IEP Meeting, Guardian did not remember why she

could not attend the scheduled meeting.  Admin. R. at 31 n.52.  The record does not demonstrate

that an explanation of why the DOE was not rescheduling the IEP Meeting would have made

Guardian's attendance more likely, and, therefore, that the lack of an explanation impeded

Guardian's participation in the decision-making process.

Accordingly, the Court concludes that the prior written notices, though deficient, were

not actionably inadequate.

E.        Failure to Reconvene an IEP Meeting

Guardian also challenges the DOE's failure to reconvene an IEP meeting after her letter

challenging the May 2018 IEP.  The DOE must arrange for an appropriate IEP within sixty days

of receiving a referral concerning a review of a student's needs.  *See* N.Y. Comp. Codes R. &

Regs., tit. 8, § 200.4(d), (f).  On June 21, 2018, Guardian informed the DOE by letter that she "is

still requesting the CSE schedule an appropriate IEP meeting at a mutually agreeable date and

time to allow for all mandated members of the IEP team to participate."  Admin. R. at 1056.

Further, at the federally-mandated resolution session,[6] the parties agreed to a partial resolution

based on the DOE's agreement to reconvene.  *Id.* at 1133.  No meeting was ever reconvened, and

Guardian argues this violated the IDEA.

SRO Krolak concluded that Guardian's challenge to the DOE's failure to reconvene a

meeting after ten days from its notice was not encompassed in the DPC.  However, the DPC does

request in its proposed settlement that the DOE "reconvene an [a]nnual [r]eview meeting for

[O.C.]."  Admin. R. at 948.  An issue raised in a prayer for relief—or a solution proposed—can

give the DOE notice of a claim.  *S.A. ex rel. M.A.K. v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 435,

2014 WL 1311761, at *16 (E.D.N.Y. Mar. 30, 2014).  Moreover, this issue was raised and

discussed at the resolution session, as the proposed partial resolution consisted of the DOE

reconvening the IEP Meeting.  Admin. R. at 1133.  Therefore, this claim is properly before the

Court.

---

[6] The IDEA requires that, within 15 days of receiving notice of the due process complaint, "the local educational agency shall convene a meeting with the parents and the relevant member or members of the IEP [t]eam who have specific knowledge of the facts identified in the complaint . . . where the parents of the child discuss their complaint, and the facts that form the basis of the complaint, and the local educational agency is provided the opportunity to resolve the complaint."  20 U.S.C. § 1415(f)(1)(B).

However, even assuming that the IEP Meeting was not appropriate, this failure to reconvene does not make the May 2018 IEP procedurally inadequate.  IHO Ajello concluded that, given the DOE's efforts to include Guardian and iHope in the decision-making process, "Parent, perhaps not intentionally, frustrated attempts to obtain her participation in the IEP [M]eeting," and so, "her non-attendance cannot be used to fault the IEP developed on May 8, 2018."  Admin. R. at 66.  The Court agrees with IHO Ajello that the DOE endeavored for months to bring Guardian into the decision-making process, and was thwarted for reasons Guardian does not remember.  Admin. R. at 861.  There is no indication that she would have participated in a reconvened IEP meeting after frustrating the attempts to schedule the IEP Meeting for months.

Similarly, the DOE attempted many times to include iHope in the decision-making process, but could not; in fact, iHope, despite its inclusion in the prior written notice for the May 2018 meeting, stated that the school was "unaware of the meeting."  Admin. R. at 64–66.  This problem appears to be endemic to the iHope IEPs of that year.  *Id.* at 560–61.  Moreover, iHope indicated that it would not participate without the permission of the parent, *id.* at 560, and, as stated above, there is no evidence that Guardian would have participated in a new IEP meeting considering that she had rebuffed several prior invitations.

 The record, therefore, contains no evidence indicating that reconvening the IEP Meeting would have resulted in the participation of Guardian or that of other individuals with knowledge, and there is, therefore, no evidence that not reconvening deprived O.C. of educational benefits or his right to a FAPE.

F.      School Choice Predetermination

Guardian contends that the IEP team's failure to consider a non-public school demonstrates that the public-school choice was predetermined.  Pl. Mem. at 18.  Although the IEP team was not required to adopt Guardian's preferred placement, "the CSE had an obligation to consider" that O.C. should attend a non-public school, and "concede that fact if the [DOE]'s public options were unable to meet [O.C.]'s needs."  *E.H. v. N.Y.C. Dep't of Educ.*, 164 F. Supp. 3d 539, 551–53 (S.D.N.Y. 2016).

SRO Krolak determined that the DPC did not raise this issue.  Guardian argues that it is encompassed in the statement that "the IEP was not the product of any individualized assessment of all [O.C.'s] needs."  Pl. Reply at 6.  The DPC, however, does not specify that Guardian objects to the public versus non-public school recommendation; she could—and indeed, does— object to many other parts of the May 2018 IEP as not sufficiently tailored to O.C.

Moreover, SRO Krolak did not reach the issue.  And, the DOE did not have notice this was Guardian's claim:  in her the June 21, 2018 letter, Guardian informed the DOE that she was willing to entertain either public or non-public school options, Admin. R. at 1056, indicating to the DOE that the public-school recommendation was not *per se* at issue.[7]  This suggestion is supported by Guardian's counsel's statements at the IHO hearing that Guardian's main contention was that the IEP was inappropriate no matter the school placement.  Admin. R. at 329–330.

One facet of the predetermination claim goes to the heart of the dispute, however.  By objecting to predetermination of a public-school recommendation, Guardian is, in effect, also

---

[7] In her testimony, Guardian stated that she would not consider a public school for O.C.  Admin. R. at 904.  To the extent that this contradicts the written notice to the DOE, it occurred after the beginning of the adversary proceedings, and so does not change the Court's conclusion that the DOE did not have proper notice.

objecting to the classroom size recommendation:  iBrain does not offer 12:1+(3:1) classrooms, only 6:1:1 and 8:1:1.  Admin. R. at 1063.  Therefore, by allegedly predetermining the school choice, the IEP team was also predetermining the classroom size.  In fact, Guardian's reason for preferring a non-public school is that O.C. needs "hands on attention," implying that her main concern in the public/non-public school debate is classroom size.  Admin. R. at 904.  As this issue is at the heart of this dispute, it falls into a *C.F.* exception, and is properly before the Court.

However, this challenge fails on the merits.  Though the May 2018 IEP does not indicate a non-public school as an "other option considered," Admin. R. at 1196, the school psychologist on the IEP team, whom IHO Ajello found credible, testified that she had considered non-public school options, and that its failure to be noted on the May 2018 IEP was a clerical error.  *Id*. at 435, 441.  On review, the district court should defer to the credibility assessments of the state officers.  *M.H.*, 685 F.3d at 240.  In addition, the May 2018 IEP notes that the IEP team considered a "[s]pecial [c]lass in a specialized school 6:1+1."  Admin. R. at 1196.  This evidence supports the school psychologist's testimony that the IEP team considered and rejected the alternate classroom size offered at iBrain and iHope.  *Id.*; *see also* Admin. R. at 320.  The Court concludes, therefore, that the IEP team did not predetermine the classroom size issue—the non-waived portion of this challenge.[8]

### III.     Claims Considered Abandoned by the SRO

"It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court."  *Baldessarre ex rel. Baldessarre*

---

[8] In addition, this part of the predetermination claim was abandoned before the SRO, *see infra* § III.  Guardian's single sentence in her RFR objecting to the DOE's alleged predetermination does not identify error by the IHO, and simply reiterates the argument made to and rejected by IHO Ajello.  *Compare* Admin. R. at 82 *with* Admin. R. at 1426–27.

*v. Monroe-Woodbury Cent. Sch. Dist.*, 496 F. App'x 131, 132–33 (2d Cir. 2012).  This

requirement "allows for the exercise of discretion and educational expertise by state and local

agencies, affords full exploration of technical educational issues, furthers development of a

complete factual record, and promotes judicial efficiency by giving these agencies the first

opportunity to correct shortcomings in their educational programs for disabled children." *Polera*

*v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 487 (2d Cir. 2002) (quoting

*Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992)).  A failure to exhaust

deprives the Court of subject matter jurisdiction to review the issue.  *Cave v. E. Meadow Union*

*Free Sch. Dist.*, 514 F.3d 240, 243 (2d Cir. 2008).

Under New York state regulations, a request for review must "identify the findings,

conclusions, and orders to which exceptions are taken, or the failure or refusal to make a

finding."  N.Y. Comp. Codes R. & Regs. tit. 8, § 279.4(a).  It must also set forth,

> (1) the specific relief sought in the underlying action or proceeding; (2) a clear
> and concise statement of the issues presented for review and the grounds for
> reversal or modification to be advanced, with each issue numbered and set forth
> separately, and identifying the precise rulings, failures to rule, or refusals to rule
> presented for review; and (3) citations to the record on appeal, and identification
> of the relevant page number(s) in the hearing decision, hearing transcript, exhibit
> number or letter and, if the exhibit consists of multiple pages, the exhibit page
> number.

N.Y. Comp. Codes R. & Regs. tit. 8, § 279.8(c)(1)–(4).  Any issue not so identified shall be

deemed abandoned.  *Id.*

Moreover, these issues must be listed in the request for review itself, rather than any

supplemental memorandum of law.  N.Y. Comp. Codes R. & Regs., tit. 8, §§ 279.4(a), 279.6(a);

SRO Appeal No. 14-070 at 11–12 (Mar. 24, 2015) (noting that to do otherwise would be to flout

the page limits contained in the regulations); SRO Appeal No. 12-131, at 10 (Aug. 19, 2013)

("[T]o the extent that the parents or their attorney have incorporated or argued additional grounds upon which to uphold the IHO's decision solely within the memorandum of law, the arguments have not been properly asserted").

Failing to appeal to the SRO "in compliance with the relevant regulations should be equated with failure to bring an appeal at all." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, No. 99 Civ. 9294, 1999 WL 980164, at *3 (S.D.N.Y. Oct. 28, 1999). Therefore, although judgments rendered solely on the basis of easily corrected procedural errors or "mere technicalities," are generally disfavored, *Foman v. Davis*, 371 U.S. 178, 181–82, where a party abandons claims due to failure to comply with these content requirements, courts in this district have found that the abandoned claims have not been exhausted. *See, e.g.*, *AR ex rel. MR v. Katonah Lewisboro Union Free Sch. Dist.*, No. 18 Civ. 9938, 2019 WL 6251196, at *12 n.8 (S.D.N.Y. Nov. 21, 2019); *M.C. ex rel. J.C. v. Mamaroneck Union Free Sch. Dist.*, No. 17 Civ. 1554, 2018 WL 4997516, at *23 (S.D.N.Y. Sept. 28, 2018).

The Second Circuit has not spoken to the standard of review a district court should apply to a SRO's decision to dismiss claims based on a failure to comply with content requirements. However, courts in this circuit have used an "arbitrary and capricious" standard of review for dismissals on other procedural grounds. *Avaras v. Clarkstown Cent. Sch. Dist.*, No. 18 Civ. 6964, 2019 WL 4600870, at *10 (S.D.N.Y. Sept. 21, 2019); *T.W. v. Spencerport Cent. Sch. Dist.*, 891 F. Supp. 2d 438, 440 (W.D.N.Y. 2012). As a failure to comply with content requirements is similarly a failure to follow New York state procedural regulations, the Court reviews SRO Krolak's determinations on abandonment under the arbitrary and capricious standard.

SRO Krolak discussed at length why the RFR did not meet the content requirements regarding the claims discussed *infra*: specifically, that the RFR merely reargued the points made

24

to, and addressed by, IHO Ajello, rather than identifying the specific IHO findings or conclusions to which Guardian objected.  Admin. R. 18–20, 31 n.51.  "Appellate review," SRO Krolak concluded, "is not designed for a party to have a second bite at the apple by simply relitigating a prior argument; on the contrary, the allegations must be clearly aimed at the findings in the IHO's decision."  Admin. R. at 20 (citing N.Y. Comp. Codes R. & Regs., tit. 8, §§ 279.4(a); 279.8(c)(2); *DiPilato v. 7-Eleven, Inc*., 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009)).  SRO Krolak considered and rejected dismissing the appeal outright based on these deficiencies, because this was Guardian's counsel's first failure to comply with the state requirements.  Admin. R. at 21.  Instead, SRO Krolak opted not to "sua sponte impute challenges to the IHO's decision that the parent has not clearly alleged, nor . . . research and construct the appealing party's arguments or guess what the parent may have intended," and instead chose to "address only those portions of the request for review in which the parents allege that the IHO erred."  *Id*. at 21–22.

    After reviewing the RFR, the Court does not find the SRO's conclusions arbitrary and capricious.  SRO Krolak considered the relevant factors in depth, and made a reasoned judgment to deem the claims abandoned.  *See B.C. ex rel. B.M. v. Pine Plains Cent. Sch. Dist*., 971 F. Supp. 2d 356, 365 (S.D.N.Y. 2013) ("The 'arbitrary and capricious' inquiry requires the Court to determine whether the SRO's decision was supported by a consideration of the relevant factors and whether a clear error of judgment occurred.").  Furthermore, for the reasons discussed below, there was no clear error.

      A.     Disability Classification

    Guardian argues that SRO Krolak improperly failed to consider her challenge to the May 2018 IEP's classification of O.C.'s disability as Multiple Disabilities, rather than TBI.  Pl. Mem.

at 10–12.  However, SRO Krolak observed that IHO Ajello found the classification question

irrelevant; the IHO determined that the May 2018 IEP was properly developed based on O.C.'s

needs, rather than solely on his classification, and an alleged misclassification would only deny

O.C. a FAPE if the IEP relied on the incorrect classification.  Admin. R. at 31 n.51, 61–62; *I.B.

v. N.Y.C. Dep't of Educ.*, No. 15 Civ. 01309, 2016 WL 1069679, at *13 (S.D.N.Y. Mar. 17,

2016) ("The IDEA mandates services tailored to a child's individual needs, not dictated by a

particular diagnosis or classification." (quoting *K.H. v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 1680,

2014 WL 3866430 at *19 (E.D.N.Y. Aug. 5, 2014)).  SRO Krolak concluded, based on this law,

IHO Ajello's determinations, and Guardian's failure to challenge the IHO's conclusion that the

May 2018 IEP was not based on O.C.'s disability classification, that the issue was not properly

raised before him.  *See* Admin. R. at 31 n.51.  The Court agrees; Guardian's challenge was not

directed at IHO Ajello's conclusions, but at the May 2018 IEP and the DOE's recommendation.

Admin. R. at 81.  Therefore, it was not arbitrary and capricious for the SRO to deem the claim

abandoned.

       B.     Untimeliness of the IEP Meeting

      Guardian also argues that the IEP Meeting was untimely because it was not held before

the February 9, 2018 date set in the meeting notices, and SRO Krolak erred in declining to

review that deficiency.  Admin. R. at 78; Pl. Mem. at 25–26.  SRO Krolak concluded, however,

that Guardian had not contested IHO Ajello's finding that the IEP was timely because it

happened before the start of the 2018–19 school year.  Admin. R. at 19.  Rather, he determined,

and the Court agrees, that Guardian merely reiterated her arguments that the IEP Meeting was

untimely because it did not take place before February 9, 2018.  *Compare* Admin. R. at 78 (RFR)

*with* Admin. R. at 1414 (post-hearing brief to the IHO).  The RFR does not provide any grounds

to depart from the IHO's conclusion that the IEP Meeting was scheduled sufficiently in advance of the 2018–19 school year to permit adequate preparation.  Admin. R. at 63.  Therefore, it was not arbitrary and capricious for the SRO to decline to review this claim.

C.      Deficiency of Evaluations

Guardian objects to the SRO's failure to consider her challenge to the sufficiency of the evaluations relied on by the DOE in creating the May 2018 IEP.  Pl. Mem. at 22.  SRO Krolak declined to consider that claim, however, because it does not appear in the RFR; instead, it is raised solely in the memorandum of law in support of the RFR.  Admin. R. at 21 n.40.  Although Guardian states she "presented this argument to the SRO," she does not point to the argument's location in the RFR, and the Court cannot find it.  Pl. Mem. at 22; Admin. R. at 76–85, 104.  A party must present an issue in a request for review for it to be properly raised to the SRO; inclusion in an accompanying brief is insufficient.  N.Y. Comp. Codes R. & Regs., tit. 8, §§ 279.4(a), 279.6(a); SRO Appeal No. 12-131, at 10 (Aug. 19, 2013).  SRO Krolak had already declined to dismiss the appeal for failing to double-space the RFR as state regulations require, thus exceeding the page limit.  Admin. R. at 16.  It was not arbitrary and capricious of him to require compliance with the regulations regarding content as well as form, particularly when the formatting non-compliance afforded Guardian even more space to provide the proper content.

D.      Composition of the IEP Team

Next, Guardian challenges the SRO's failure to consider her claim regarding the composition of the IEP team.  However, SRO Krolak determined that the RFR does not pose any new challenges to IHO Ajello's conclusion that the makeup of the IEP team, though deficient without Guardian, iHope individuals, or a school physician, nevertheless did not deprive O.C. of a FAPE.  Admin. R. at 20.  IHO Ajello found that there was no evidence a physician was

necessary, and that Guardian's conduct served to frustrate the DOE's ability to gain her and iHope's participation.  *Id.* at 63, 66.  The RFR does not challenge the conclusion that the noncompliance did not deprive O.C. of a FAPE, but merely reargues that the composition was noncompliant.  *See id.* at 80 ("All mandated members must attend full committee IEP review meetings . . . there was *no* DOE school physician, *no* DOE social worker, *no* parent member, *no* parent/guardian, *no* special education teacher or related service provider of O.C. despite their required attendance."); *id.* at 1417 (same in post-hearing brief to the IHO).  Therefore, SRO Krolak was not arbitrary and capricious in concluding this claim was not before him.

> E.    Classroom Size and Management Needs

Guardian challenges the May 2018 IEP's failure to address O.C.'s highly intensive management needs; that is, its recommendation of a 12:1:(3+1) class size rather than 6:1:1, *see* Admin. R. at 81, and SRO Krolak's declining to review the merits of this challenge.  Pl. Mem. at 22–24.  However, SRO Krolak's determination that this issue was not properly posed in the RFR was not arbitrary and capricious.  IHO Ajello concluded that the DOE had explained and supported the May 2018 IEP recommendation, based on his crediting the DOE's witness that "the 12:1:4 population . . . [is] able to provide . . . the constant supervision that [O.C.] needs . . . [b]ut they also help provide constant stimulation for the child."  Admin. R. at 60–61.  The DOE's conclusion was based on "available information," and "evidenced consideration of [O.C.'s] specific special education needs."  *Id.* at 62.

In the RFR, Guardian contends that a 6:1:1 class size is necessary due to O.C.'s "highly intensive management needs" and that the 12:1:(3+1) classroom size is not the "least restrictive program, as required."  *Id.* at 81.  In her memorandum of law supporting the RFR, she expands, arguing that the DOE provided no evidence to justify the May 2018 IEP's not adequately

"consider[ing], nor mention[ing]" iHope's management need recommendations.  Admin. R. at

108–09.  These highly intensive management needs, if accepted, would mean that O.C.'s

classroom size must be no larger than 6:1:1, pursuant to New York regulation.  *Id.* at 110; N.Y.

Comp. Codes R. & Regs., tit. 8, § 200.6(h)(4)(ii)(a).  In addition, Guardian argues that under the

IDEA, a student must be placed in the "least restrictive environment," that is, educated with their

non-disabled peers as much as possible; New York's guidelines provide that a 6:1:1 classroom is

less restrictive than a 12:1:(3+1).  Admin. R. at 110, 1117; *P. ex rel. Mr. & Mrs. P. v. Newington

Bd. of Educ.*, 546 F.3d 111, 119 (2d Cir. 2008).

Although Guardian challenges the DOE's assessment of the required class size, provides

support for a finding that a 6:1:1 classroom may also have been appropriate, and reiterates

arguments regarding the necessity of including certain management needs, she does not

challenge IHO Ajello's crediting of the DOE witness's testimony that the 12:1:(3+1) classroom

size is sufficient to provide a FAPE to O.C., nor provide any basis for SRO Krolak to overturn

IHO Ajello's conclusions that the May 2018 IEP was sufficient, despite its exclusion of the

management needs.  *Compare* Admin. R. at 81 *with* Admin. R. at 1420–1422.  For example,

although Guardian argues that the DOE does not offer evidence that the IEP team considered the

highly intensive management needs listed in the iHope recommendation, that does not contradict

IHO Ajello's finding that the IEP team considered the available documents, and created an IEP

that sufficiently addressed O.C.'s needs.  Accordingly, it was not arbitrary and capricious for

SRO Krolak to conclude that this claim was abandoned.

In addition, Guardian's challenge fails on the merits.  IHO Ajello concluded that the May

2018 IEP sufficiently addressed O.C.'s management needs, crediting the DOE's expert.  Admin.

R. at 61.  Although Guardian argues that O.C.'s management needs were in fact more intensive,

as described in the iHope recommendations and IHO Vanessa Gronbach's conclusions in her pendency opinion for the 2017–18 school year, Pl. Mem. at 18, the DOE was not bound by iHope's recommendations or its own prior IEPs. *See* 20 U.S.C. § 1414(d)(4)(ii); *P.C. v. Rye City Sch. Dist.*, 232 F. Supp. 3d 394, 414 (S.D.N.Y. 2017). IHO Ajello found that the DOE had considered the documents in O.C.'s records, which would include iHope's recommendations and IHO Gronbach's opinion, concluded that the lesser management needs in the May 2018 IEP were sufficient, and supported that conclusion with evidence that it was based on those documents and the IEP team's experience. Admin. R. at 52, 60–61. The Court defers to IHO Ajello's crediting of the DOE witness, and finds that his conclusion is supported by the DOE witness' testimony regarding why the 12:1:(3+1) classroom is appropriate. Admin. R. at 322.

Moreover, the consideration of a less restrictive environment is fact-specific, and includes multiple factors. *P. ex rel. Mr. & Mrs. P.*, 546 F.3d at 119. Although a 12:1:(3+1) classroom is considered more restrictive than a 6:1:1 classroom, a non-public school is considered more restrictive than a public school. Admin. R. at 1117. Therefore, O.C.'s placement in a more restrictive classroom size does not necessarily translate to a more restrictive environment. *Id.* The Court, therefore, defers to IHO Ajello's conclusion that the 12:1:(3+1) environment was appropriate. Admin. R. at 61; *S.A. ex rel. M.A.K. v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 435, 2014 WL 1311761, at *13 (E.D.N.Y. Mar. 30, 2014) ("Determining what class size is appropriate for a student is exactly the sort of policy judgment on which the Second Circuit has instructed that this Court should defer" (internal quotation marks and citation omitted)).

### F.    Related Services Duration and Frequency

Finally, Guardian objects to the May 2018 IEP's recommendation of related services, which reduced the duration and frequency of services in the 2016–17 IEP and the iHope

recommendation.  Admin. R. at 82.  She states that there would be a "continued benefit" in the sixty-minute, more frequent sessions.  *Id.*  She does not, however, specify in the RFR the IHO finding that she challenges, or give reasons to overturn IHO Ajello's conclusions that the related services recommendations in the May 2018 IEP, though not perfect, address O.C.'s areas of need, based on his crediting the DOE witness's discussion of how she came to the recommendations.  *Id.* at 61–62.  Therefore, this issue was not properly raised to the SRO.

To the extent that Guardian's memorandum of law specifies that IHO Ajello's conclusion was incorrect given the DOE's failure to present testimony from any related service provider supporting its position, Admin. R. at 113, that issue needed to have been raised in the request for review, not a memorandum of law.  N.Y. Comp. Codes R. & Regs., tit. 8, § 279.6(a); SRO Appeal No 14-070 at 12 (Mar. 24, 2015); *supra* § III.C.

Moreover, this contention would fail on the merits as well.  Because the DOE is not bound by its previous determinations, a recommendation different from iHope's or what IHO Gronbach found sufficient does not deprive O.C. of a FAPE if it is not independently inappropriate.  *See M.H.*, 685 F.3d at 256.  IHO Ajello concluded that the related services recommendation was appropriate, and supported by the DOE witness' testimony.  Admin. R. at 62, 52.  Though Guardian's witness testified to the necessity of longer, more frequent sessions, Admin. R. at 687, on review the Court should defer to the IHO's assessment of the expert witness testimony.  *M.H.*, 685 F.3d at 240.  Therefore, even if the issue had not been abandoned, the reduction in related services would not deprive O.C. of a FAPE.

Accordingly, Guardian has not demonstrated that the DOE and the May 2018 IEP violated the IDEA in a way that deprived O.C. of a FAPE for the 2018–19 year.[9]

---

[9] Because the Court finds that O.C. was not deprived of a FAPE for the 2018–19 year, it need not reach Prongs II or

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is DENIED and Defendants' cross-motion for summary judgment is GRANTED.

The Clerk of Court is directed to terminate the motions at ECF Nos. 21 and 24, and to close the case.

SO ORDERED.

Dated: March 15, 2021
New York, New York

_____
ANALISA TORRES
United States District Judge

---

III of the Burlington/Carter test. *M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 66 (2d Cir. 2000). For the same reason, it was not in error for the IHO and SRO to not consider Prongs II and III, to the extent they did not.